# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALLACE G. DICKSON, 1707 Columbia Road, NW, Washington, DC 20009<br><br>    on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. _____<br><br>CLASS ACTION COMPLAINT |

Plaintiff Wallace G. Dickson ("Plaintiff") brings this complaint on his own behalf and on behalf of a class of persons defined below, against the United States of America, acting through the Department of Treasury and the Internal Revenue Service (collectively, "Defendant"), and states the following:

## INTRODUCTION

1. Tax preparers are persons hired by taxpayers to help prepare their tax returns.

2. Tax preparation—that is, simply assisting with or preparing a tax return or claim for a tax refund—can be performed by anyone. It is not "practice"

1

before the Internal Revenue Service ("IRS").  *Practice Before the Internal Revenue Service*, 31 Fed. Reg. 10773, 10774 (Aug. 13, 1966); *Practice Before the I.R.S. and Power of Attorney*, I.R.S. Publication 947 (rev. April 2009) at 2.

3. Because tax preparation is not practice before the IRS, the IRS has no legal authority to regulate persons wishing to prepare taxes for others—and has recognized that fact for decades.

4. In 2010, however, the IRS departed from its previous decades-long recognition of its limited legal authority and embarked on an ambitious campaign to regulate tax preparers.  Then-IRS Commissioner Shulman called this the IRS's "Return Preparer Initiative" (hereinafter, "Initiative"), and, in furtherance of the initiative, created a new division within the IRS called the "Return Preparer Office."

5. As part of this Initiative, the IRS attempted, for the first time, to impose a variety of requirements on tax preparers including competency testing and continuing education requirements.

6. Under the Initiative, the IRS also required all tax preparers to apply for and obtain a Preparer Tax Identification Number ("PTIN").  The IRS has charged tax preparers $64.25 to receive a PTIN (the "PTIN Issuance Fee") and an annual fee of $63 to renew a PTIN (the "PTIN Renewal Fee") (collectively "PTIN fees").

7. According to the IRS's website, as of December 1, 2014, it had issued a PTIN to 1,064,986 individuals since September 28, 2010.

8. Since the IRS launched its unprecedented (and, as discussed herein, illegal) efforts to regulate tax preparers, this Court and the United States Court of Appeals for the District of Columbia have invalidated efforts to regulate tax return preparation on the ground that the IRS had exceeded its legal authority. *See Loving v. Internal Revenue Service*, 917 F. Supp. 2d 67 (D.D.C. 2013), *aff'd* 742 F.3d 1014 (D.C. Cir. 2014) ("[N]othing in the statute's text or the legislative record contemplates that vast expansion of the IRS's authority . . . the IRS never interpreted [31 U.S.C. § 330] to give it authority to regulate tax-return preparers. Nor did the IRS ever suggest that it possessed this authority but simply chose, in its discretion, not to exercise it."); *Ridgley v. Lew*, --- F. Supp. 2d ----, 2014 WL 3506888 (D.D.C. July 16, 2014) (IRS exceeded its authority when prohibiting tax return preparers from charging contingent fees for services rendered in connection with any matter before the IRS).

9. Despite the lack of any legal authority to regulate tax preparers, the IRS continues to collect PTIN fees from persons who prepare tax returns for others. To date the IRS has unlawfully collected over $200 million in PTIN fees from Plaintiff and other tax preparers.

10. Defendant lacks the legal authority to require the payment of PTIN fees, or to charge PTIN fees in the amounts of $64.25 and $63.

11. Plaintiff thus seeks refunds of all PTIN fees paid by Plaintiff and any member of the proposed Class. Alternatively, assuming *arguendo* that the IRS is authorized to require and charge some amount for PTINs, the amount of the PTIN fees is set higher than is authorized by law. Plaintiff thus seeks refunds of the portions of the PTIN fees paid by Plaintiffs and any member of the proposed Class in excess of the amounts legally authorized.

12. Plaintiff also asks the Court to issue an injunction prohibiting the Defendant from charging PTIN fees, or from charging excessive PTIN fees in the amounts of $64.25 and $63.

## **THE PARTIES**

13. Plaintiff Wallace G. Dickson, a resident of Washington, DC, prepares tax returns for compensation in Washington, D.C. Plaintiff has been preparing tax returns for compensation since approximately 1995, many years before the IRS began requiring the payment of PTIN fees. Plaintiff has paid PTIN fees. His PTIN Number is P00****65.[1]

14. Defendant has unlawfully charged and collected PTIN fees from Plaintiff and others who prepare tax returns for compensation.

---

[1] A portion of Plaintiff's PTIN number is redacted for privacy.

## **JURISDICTION AND VENUE**

15.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a).  Plaintiff's individual claim against Defendant does not exceed $10,000, nor does the individual claim of any other class member.

16.     The Court has jurisdiction over all parties to this lawsuit, and venue is proper in this District pursuant to 28 U.S.C. § 1402(a).

## **FACTUAL ALLEGATIONS**

17.     In the 1970s, the IRS began requiring individuals who prepared tax returns for others to include their own Social Security Number on prepared returns.

18.     Starting in 2000, the IRS addressed concerns about the privacy and confidentiality of tax preparers' social security numbers by allowing tax preparers to instead voluntarily request a PTIN from the IRS and to use that PTIN on returns they prepared.

19.     The IRS issued a PTIN voluntarily requested by a tax preparer for no charge.  Those PTINs did not expire and did not require renewal.

20.     The IRS maintained a system of issuing a free, non-expiring, PTIN to each tax preparer who voluntarily requested one until 2010, when the IRS launched its Return Preparer Initiative.

21. As part of the IRS Return Preparer Initiative, PTINs were no longer voluntary. Instead, all persons wishing to perform tax preparation services were required to apply for and obtain a PTIN beginning in late 2010. Additionally, PTINs were also set to expire annually and thus had to be renewed each year.

22. The imposition of a PTIN fee (and registration requirement) was an essential component of the IRS's Return Preparer Initiative—and, on information and belief, the only way that the Agency could fund the Initiative. Indeed, the Return Preparer Office has acknowledged that the IRS deployed the PTIN fee and registration system "as a component of its initiative to register and regulate paid tax return preparers." As then-Commissioner Shulman explained in October 2010: "[M]ore than just an identification number, the PTIN registration process gives us an important and better line of sight into the return preparer community than we've ever had before. We can leverage that information to help us better analyze trends, spot anomalies and potentially detect fraud."

23. PTIN fees—and the PTIN registration requirement and system generally—have been imposed on Plaintiff and class members for the benefit of the IRS, taxpayers, and the general public.

24. Those paying PTIN fees to Defendant receive no special benefit or service of value in exchange for payment of the fees not received by the general public.

25. The payment of a PTIN fee does not authorize or permit the payor to represent persons before the IRS.

26. Even assuming the IRS had the legal authority to require the payment of any PTIN fee, the amount of the PTIN fees charged is unfair and excessive.

27. The amount of the PTIN fees charged by the IRS is excessive in light of Defendant's relevant costs related to the issuance and renewal of PTINs.

28. The amount of the PTIN fees charged by the IRS is also excessive in light of the value to Plaintiff and class members of any purported service provided by the IRS in exchange for payment of PTIN fees.

29. Upon information and belief, the IRS has used a substantial proportion of the revenue it has collected from PTIN fees to fund activities unrelated to the issuance of PTINs.

30. Upon information and belief, the IRS has used a substantial proportion of the revenue it has collected from PTIN fees to fund activities and programs that do not provide any direct benefit to the PTIN fee-payor.

31. Upon information and belief, the IRS has used a substantial proportion of the revenue it has collected from PTIN fees to fund activities and programs that exceed the IRS's legal authority, including activities and programs conclusively determined to be unlawful by the United States Court of Appeals for the District of Columbia. *See Loving*, 742 F.3d 1014.

32. The IRS's imposition and collection of PTIN fees is not legally authorized by 31 U.S.C. § 9701, 26 U.S.C. § 6109, or any other statute.

33. The IRS violated Plaintiff's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution by imposing and collecting from him PTIN fees which are legally unauthorized.

34. The IRS charges $64.25 for a PTIN (the "PTIN Issuance Fee"), and an annual PTIN renewal fee of $63 (the "PTIN Renewal Fee") (collectively "PTIN fees").

35. Since instituting the Return Preparer Initiative, the IRS will not issue or renew a PTIN without payment of the applicable PTIN fee, even though it formerly issued PTINs for no charge.

36. According to the IRS's website, as of December 1, 2014, it had issued a PTIN to 1,064,986 individuals since September 28, 2010.

37. Plaintiff and other tax preparers are subject to penalties if they submit a return which does not include a PTIN. *See*, *e.g.*, 28 U.S.C. § 6695 (penalty to be imposed against tax return preparers who fail to furnish required identifying number).

38. Plaintiff has paid PTIN fees to the IRS.

39.     The IRS lacks legal authority to require the payment of PTIN fees by tax preparers, and has unlawfully collected PTIN fees from Plaintiff and class members.

40.     Plaintiff, and other tax preparers, had been preparing tax returns for compensation for decades before the IRS began requiring them to pay PTIN fees.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this case as a class action pursuant to Rule 23, and in particular, Rule 23(b)(1), Rule 23(b)(2) and Rule 23(b)(3), of the Federal Rules of Civil Procedure.

42.     Plaintiff seeks certification of the following class:

*All persons who, since September 2010, have paid a fee to the Internal Revenue Service in order to obtain or renew a Preparer Tax Identification Number (PTIN).*

43.     The class is so numerous that joinder of all members in this action or any action, is impracticable. The exact number or identification of Class Members is presently unknown to Plaintiff, but the IRS reports on its website that as of December 1, 2014, it had issued a PTIN to 1,064,986 individuals since September 28, 2010. The identity of class members is readily ascertainable from the records of the IRS.

44. Common questions of fact and law exist as to all members of the Class. These include, but are not limited to, the following:

    (a) Whether the IRS has legal authority to require payment of the $64.25 fee by Plaintiff in order to obtain a PTIN;

    (b) Whether the IRS has legal authority to require payment of a $63 fee by Plaintiffs to renew a PTIN;

    (c) Whether the $64.25 initial PTIN issuance fee imposed by the IRS is excessive;

    (d) Whether the $63 PTIN renewal fee imposed by the IRS is excessive;

    (e) Whether Defendant illegally exacted the property of Plaintiff and class members. *Aerolinas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (An "illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'").

      (a)      Whether Plaintiff and members of the class are entitled to injunctive relief prohibiting the IRS from charging PTIN issuance and renewal fees in the future; and

      (b)      Whether Plaintiffs and members of the class are entitled to a refund of the PTIN issuance and/or renewal fees paid.

45. Plaintiff's claims are typical of the claims of members of the Class and all claims arise out of the same wrongful conduct by Defendant.

46. Plaintiff is an adequate representative of the Class because he is a member of the class and because his interests do not conflict with the interests of the Class he seeks to represent. Plaintiff is represented by experienced and able counsel who have litigated numerous class actions, including class actions against the United States, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of all Class Members. Plaintiff and his counsel can adequately protect the interests of the Class.

47. The prosecution of separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant. In addition, the prosecution of separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the

interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

48.     Defendant has acted or has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

49.     Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this case.  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of the Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single-adjudication, economies of scale, and comprehensive supervision by a single court.

# COUNTS

## Count I - Illegal Exaction (All PTIN Fees)

50. The IRS lacks legal authority to require the payment of PTIN fees by tax preparers, and has unlawfully collected PTIN fees from Plaintiff and class members.

51. PTIN fees—and the PTIN registration requirement and system generally—have been imposed for the benefit of the IRS, taxpayers, and the general public.

52. Those paying PTIN fees to Defendant receive no special benefit or service of value in exchange for payment of the fees not received by the general public.

53. Defendant has violated Plaintiff's constitutional rights by imposing and collecting from Plaintiff PTIN fees which are legally unauthorized.

54. Defendant has illegal exacted Plaintiff's property by imposing and collecting PTIN fees unauthorized by law.

55. Plaintiff is legally entitled to have returned to him all of the PTIN fees he paid to the IRS.

**Count II - Illegal Exaction (PTIN Fees Beyond Amounts Authorized by Law)**

56.     Even if the IRS has legal authority to require the payment of PTIN fees of some amount, the IRS has exceeded its legal authority by requiring the payment of PTIN fees in amounts unauthorized by law.

57.     Defendant has violated Plaintiff's constitutional rights by imposing and collecting from Plaintiff PTIN fees in excess of the amounts legally authorized.

58.     Defendant has illegal exacted Plaintiff's property by imposing and collecting PTIN fees unauthorized by law.

59.     Plaintiff is legally entitled to have returned to him the portion of PTIN fees he paid to the IRS in excess of the amounts legally authorized.

## PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of himself and members of the proposed Class, requests that this Court grant the following relief:

- A. An injunction prohibiting the Defendant and any agency of the Defendant from charging fees to issue or renew a PTIN, or from charging fees in excess of amounts authorized by law;

- B. An order requiring Defendant to return or refund all PTIN fees paid by Plaintiff and any member of the proposed Class which were unauthorized by law;

- C. An award of pre-and post-judgment interest on the amount of any refunded PTIN fees;

D. Costs and expenses in this litigation, including, but not limited to expenses for discovery and experts, and reasonable attorneys' fees; and

E. Such other relief as the Court may deem just and appropriate.

Dated: December 31, 2014

Respectfully submitted,

*/s/ James J. Pizzirusso*

James J. Pizzirusso (#477604)
Hilary Scherrer (#481465)
HAUSFELD LLP
1700 K Street, NW
Suite 650
Washington, DC 20006
(202) 540-7200

Scott E. Gant (#455392)
Michael S. Mitchell (#986708)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Suite 800
Washington, DC 20015
(202) 237-2727

Jeffrey D. Kaliel (#983578)
Andrew Silver (#1017462)
TYCKO & ZAVAREEI LLP
2000 L Street, NW
Suite 808
Washington, DC 20036
(202) 973-0900

*Attorneys for Plaintiff and the Proposed Class*

15